IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-00876-LTB

TERESA ANN BRUMMETT,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

_____

ORDER

_____

Plaintiff Teresa Ann Brummett appeals Defendant's (the "Commissioner") final administrative decision denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

**I.  Statement of the Case**

A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on September 4, 2012. On September 24, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's September 24, 2012 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

**II.  Statement of Facts**

**A.  Background**

Plaintiff was born on August 3, 1978, making her 31 years old at the time of her alleged disability onset date of August 19, 2009.  Administrative Record ("AR") 31.  Plaintiff has a high school education and also completed three years of college.  AR 31 & 205.  Plaintiff has worked in the past as a Starbucks manager and as a receptionist.  AR 40 & 59-60.  Plaintiff alleged disability due to hip pain, tingling and numbness in her legs and feet, chronic pain, and a lower back injury with disc tear and herniation.  AR 200 & 204.

**B.  Relevant Medical Evidence**

On her alleged disability onset date of August 19, 2009, Plaintiff went to the emergency room for pain in her back and left ankle after slipping and falling at work.  AR 240.  Plaintiff's examination showed tenderness in her back but a normal range of motion and tenderness in her left ankle, knee, and foot with a limited range of motion.  AR 240-41.  Plaintiff's x-rays were normal, and she returned to work the next day but left early due to discomfort.  AR 367.

Plaintiff had follow up appointments the following week.  On August 24, 2009, Plaintiff's primary care physician noted that Plaintiff had some tenderness and pain in her back but an "otherwise ok exam."  AR 279.  Three days later, Plaintiff was evaluated by an orthopedic specialist for "her left foot and ankle symptoms."  AR 246.  Prior surgery to Plaintiff's left knee was noted.  *Id.*  At that time, Plaintiff was full weight bearing but reported feeling " a constant dull ache with intermittent sharp, shocking pains which she rates a 6-9/10" and swelling and bruising.  *Id.*  Plaintiff was assessed with strains and sprains of the ligaments in her left ankle and foot and advised to use a lace up ankle support, ice, and elevation.  AR 247-8.

Three weeks after her fall at work, Plaintiff was still experiencing back pain and was referred to an orthopedic back specialist, Daniel P. Sipple, D.O.  AR 278.  Dr. Sipple examined Plaintiff on September 16, 2009 and observed that Plaintiff was in obvious discomfort and could bend down and touch her toes but experienced pain when she returned to a spine-neutral position.  AR 268.  Plaintiff reported to Dr. Sipple that she had noticed substantial improvement in her back pain over the last four weeks and was eager to return to work.  AR 269.  To facilitate her return to work, Plaintiff expressed interest in a lumbar epidural steroid injection.  *Id.*  Dr. Sipple administered the injection on September 25, 2010 (AR 252-53) but Plaintiff still reported back pain of "7/10," or "5/10" with pain medication over a week later.  AR 266.  Dr. Sipple recommended that they proceed with an MRI and a physical therapy program.  *Id.*

An MRI of Plaintiff's spine was performed on October 13, 2009 showed a "mild disk bulge, slightly more pronounced left of midline" at L4-5 and a related "small posterior anular tear."  AR 256.  Dr. Sipple administered additional lumbar epidural steroid injections to Plaintiff (AR 254-55) and later noted that though Plaintiff did not feel that her pain changed significantly after the epidural she did report that her function had improved in spite of persistent pain and that her range of motion had substantially improved.  AR 271.  Plaintiff also reported that her tolerance for standing was steadily improving and that she could stand for one hour and sit for two hours.  AR 272.  Dr. Sipple noted that Plaintiff's recovery was "not as quick as ... was hoped for or anticipated."  *Id.*

Dr. Sipple next saw Plaintiff in February of 2010.  At this appointment, Dr. Sipple observed Plaintiff sitting on the floor, Indian-style, with her one-year old daughter in a forward flexed position with no discomfort.  AR 270.  Dr. Sipple also observed Plaintiff lifting her

daughter's full weight without any apparent distress.  *Id.*  Dr. Sipple found it "ironic" that

Plaintiff winced while being examined despite having no difficulty with these activities or when

transferring from a seated to a standing position prior to examination.  AR 270-71.  Dr. Sipple

noted that Plaintiff claimed to have had six sessions of physical therapy while therapy records

showed that she had only had two or three sessions since September of 2009.  AR 270.  Dr.

Sipple opined that plaintiff was at maximum medical improvement and noted her non-

compliance with therapy and inconsistent history.  AR 271.

On February 25, 2010, Plaintiff saw her primary care physician for anxiety.  AR 277.

Plaintiff reported having "horrendous nightmares" for a period of 3-4 weeks and occasional

panic attacks.  *Id.*  Dr. McLaughlin recommended that Plaintiff try to see a counselor and try

Celexa.  *Id.*

In October of 2010, Perry L. Haney, M.D. performed an independent medical

examination of Plaintiff in connection with her worker's compensation claim.   Dr. Haney

observed that Plaintiff was in "moderately severe musculoskeletal distress, noted to move about

the examination room and on and off the examination table somewhat slowly, protecting

movement of the lumbar spine on distracted observation."  AR 295.  Imaging studies obtained by

Dr. Haney showed "right lateral flexion of L4 on 5, correcting to midline at L1-L2" and "some

evidence of early discogenic spondylosis in the lumbar spine."  AR 292.  Dr. Haney opined that

Plaintiff was at maximum medical improvement only if she declined further intervention and

treatment and assigned her a permanent impairment rating of 18% based on her current

condition.  AR 296-97.

In February of 2011, Claudia Elsner, M.D., performed a consultative examination of Plaintiff in connection with her application for disability benefits.  Dr. Elsner observed that Plaintiff "walks fluently with normal posture;' had normal balance; "goes into a full squat and comes back without signs of weakness;" and "tries to guard her posture carefully."  AR 300.  On examination of Plaintiff's spine, Dr. Elsner noted that Plaintiff was able to perform a 90- degree thoracolumbar flexion but felt pain after 45-50 degrees and extension to only about 10 degrees.  *Id.*  Dr. Elsner further noted that Plaintiff had some discomfort over both hips during straight leg testing and spastic muscles in the paralumbar region from roughly L4 down.  AR 300-1.  Dr. Elsner found that Plaintiff's pain behaviors were credible overall; that Plaintiff's ability to work was somewhat limited as any sitting needs to be interrupted after 30-45 minutes; that Plaintiff was experiencing pain from long walking simply due to posturing; and that Plaintiff had normal capabilities in her upper extremities and for fine motor skills.  AR 301-2.

Plaintiff did not seek further medical treatment until December of 2012.  At that time, Plaintiff was seen by Sarah Chess, M.D., for chronic lower back pain.  AR 311-12.  Dr. Chess noted that Plaintiff reported chronic pain, limited range of motion, and tingling/numbness in her feet/toes but no pain or weakness in her legs and wanted to establish care prior to reapplying for disability.  AR 311.  Upon examination, Dr. Chess noted that Plaintiff had tenderness in her lower back, a negative straight leg raise, diminished sensation at L4-5, and a normal gait.  AR 312.  Dr. Chess recommended that Plaintiff continue with supportive care, massage, and stretching therapy until she delivered the baby she was carrying.  *Id.*

In May of 2012, a different provider prescribed physical therapy to Plaintiff after she dislocated her left knee cap.  AR 313.  Plaintiff declined the use of a knee immobilizer.  *Id.*  Dr.

Chess saw Plaintiff again in June of 2012 and noted that Plaintiff had tenderness along the L4-5 paraspinal region and the midthoracic paraspinal area and along her left knee cap.  AR 323.  Dr. Chess recommended ongoing aggressive conservative management of her symptoms with physical therapy, massage, and chiropractic care.  *Id.*

## C.  Plaintiff's Disability Hearing

At the September 4, 2012 hearing at which she was represented by counsel, Plaintiff testified that the issues with her left knee limited her ability to squat, walk up and down stairs, and stand from a sitting position; that she had never taken any medication for her anxiety and felt that she could better manage it; and that her low back injury caused her to move and walk differently which was hard on her lower joints.  AR 40, 47 & 48.  Plaintiff testified that her doctors told her she could lift no more than 10-15 pounds; had to change positions frequently; couldn't climb; and could only do "extremely limited" bending, squatting, and stooping.  AR 47-8.  Upon follow up questioning from her counsel, Plaintiff specified that she could sit for 30 minutes before needing to get up and move for 15-30 minutes and could stand for 30 minutes before needing to change position.  AR 50-51.  Plaintiff testified that pain would prevent her from working at a full-time desk job.  AR 58.

The ALJ asked the vocational expert ("VE") if there were jobs in the national economy that could be performed by an individual with the same age, educational background, and work experience who could do sedentary work if "[n]ot required to stoop or climb ramps more than occasionally[;] [n]ot required to climb scaffolds, ladders, and ropes, kneel, crawl, balance, or crouch[;] [n]ot required to sit for more than 30 minutes at one time without the opportunity to stand[;] [n]ot required to stand, walk for more than 15 minutes at one time without the

opportunity to sit[;] [and [n]ot required to work at unguarded heights or near unguarded

hazardous mechanical equipment." AR 60-1. The VE responded that there were a lot of jobs

such an individual could perform and gave ticket checker and telephone quotation clerk as two

examples. AR 61. In giving this opinion, the VE testified that she considered whether these jobs

would allow a person to sit for 30 minutes and then briefly stand or stretch before sitting again.

AR 61-2. On cross examination, Plaintiff's attorney asked the VE a single question; that is,

whether an individual who also had to walk for at least 10-15 minutes after 30 minutes of sitting

could perform the identified jobs. AR 62. The VE responded that such an individual could not.

*Id.*

**D. The ALJ's Decision**

        In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§

404.1520(a). At the first step of the sequential process, the ALJ determined that although

Plaintiff had worked some since her alleged disability onset date of August 19, 2009, she had not

engaged in substantial gainful activity since that date. AR 20. At the second step, the ALJ

determined that Plaintiff had severe impairments of "chronic low back pain secondary to lumbar

spine degenerative disk disease with annular tear at L4-5, with lower extremity radicular

symptoms; left knee condition, status post lateral release with subsequent dislocations." AR 19-

20. At the third step, the ALJ determined that Plaintiff did not have an impairment or a

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

        The ALJ next determined that Plaintiff had the RFC to perform sedentary work as

defined in 20 C.F.R. § 404.1567(a) but could not be required to sit for more than 30 minutes at a

time without the opportunity to stand; to stand or walk for more than 15 minutes without the

opportunity to sit; to stoop or climb ramps or stairs more than occasionally; to climb ladders,

ropes, or scaffolds; to kneel, crawl, balance, or crouch; or to work at unguarded heights or near

unguarded hazardous equipment.  AR 23.  Based on the assessed RFC, the ALJ concluded that

Plaintiff was unable to perform any past relevant work (AR 30) but could work at other jobs

existing in significant numbers in the national economy such as ticket taker and telephone

quotation clerk.  AR 31-2.  Thus, the ALJ concluded that Plaintiff had not been disabled within

the meaning of the Act from August 19, 2009 through the date of his decision.  AR 32.

### III.  Standard of Review

In reviewing the Commissioner's decision,  I must determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028

(10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98

(10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither

reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge."

*Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).

### IV.  Analysis

On appeal, Plaintiff argues that the ALJ erred (1) by failing to include restrictions in

Plaintiff' RFC related to her anxiety or to adequately explain his failure to do so; (2) by relying

on the permanent impairment rating assigned to Plaintiff in connection with her worker's

compensation claim; and (3) in concluding that there are jobs available in the national economy

for someone with Plaintiff's limitations.

## A.  The ALJ's Treatment of Plaintiff's Anxiety

At step 2 of the sequential process, the ALJ found that Plaintiff had a medically determinable impairment of anxiety but that this impairment was non-severe because it did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental activities.  AR 21.  In support of this finding, the ALJ discussed what little evidence there was in the record regarding Plaintiff's anxiety and considered the four broad functional areas known as the "paragraph B' criteria.  AR 21-2.  The ALJ found that Plaintiff's anxiety caused no more than "mild" limitations in any of the first three functional areas and "no" episodes of decompensation with respect to the fourth functional area.  AR 22.

On appeal, Plaintiff does not challenge the ALJ's findings regarding her anxiety at step 2 of the sequential process but argues that the ALJ erred in failing to consider the mild limitations he found were caused by her anxiety in combination with her other impairments in assessing her RFC.  I agree that the ALJ erred in his assessment of Plaintiff's RFC by failing to discuss Plaintiff's anxiety and whether it caused any limitations in her ability to function but conclude that this error was harmless in light of the evidence in the record.

At step 2 of the sequential process, the ALJ acknowledged that his assessment of the severity of Plaintiff's mental impairments was not equivalent to an assessment of Plaintiff's mental RFC because the latter "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)."  AR 22.  The ALJ further stated that "[t]herefore, the following [RFC] assessment reflects the degree of limitation the

undersigned has found in the "paragraph B" mental function analysis."  *Id.*  Then, in making his findings regarding Plaintiff's RFC, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence...."  AR 23.

The ALJ correctly stated the applicable legal standards that he consider the combined effect of all of Plaintiff's impairments, whether severe or not severe, in assessing her RFC and that his finding of non-severity at step 2 cannot serve as a substitute for a full RFC analysis.  *See Wells v. Colvin,*  727 F.3d 1061, 1065 (10th Cir. 2013).  There is nothing in his discussion of Plaintiff's RFC, however, to show that he actually applied these standards.  The lack of any discussion of Plaintiff's anxiety in the portion of the opinion devoted to an assessment of Plaintiff's RFC also demonstrates that the ALJ did not include the requisite narrative discussion describing how the evidence supported his obvious conclusion that Plaintiff's anxiety did not warrant the inclusion of any mental limitations in the RFC he assessed for her.  *See Wells, supra* ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and non-medical evidence.").

Despite the ALJ's error in failing to discuss Plaintiff's anxiety in his assessment of her RFC, remand is unwarranted under the circumstances of this case.  The Tenth Circuit has recognized that a finding of harmless error is appropriate "where based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004).  The evidence is this case regarding Plaintiff's anxiety consists of a single medical record from 2010 and Plaintiff's

admissions that she never took any medication for this condition and is now better able to manage its causes.  Such little evidence cannot support the assessment of any mental limitations in Plaintiff's RFC, and a finding of harmless error is therefore appropriate to avoid a futile remand.

**B. The ALJ's Discussion of Plaintiff's Permanent Impairment Rating**

After discussing Dr. Haney's findings including his permanent impairment rating for Plaintiff of 18%, the ALJ noted that a decision by a non-governmental or other governmental agency about whether an individual is disabled is not binding on the Social Security Administration which must make its own disability determination based on Social Security law. AR 27.  The ALJ further noted that he nonetheless considered Dr. Haney's assessment/ impairment rating because all evidence that may have a bearing on a determination of disability must be considered.  *Id.*  The ALJ proceeded to give Dr. Haney's assessment "some weight." AR 27-8.

Plaintiff argues that the ALJ's reliance on Dr. Haney's assessment was in error because it cannot constitute substantial evidence relevant to the issue of whether Plaintiff is disabled for purposes of the Social Security Act.  While Dr. Haney's assessment is not binding on the ALJ, it does constitute relevant evidence to be considered.  *See* SSR 06-03p, 2006 WL 2329939 at * 1 ("...when we make a determination or decision of disability, we will consider all of the available evidence in the individual's case record.  This includes ... decisions by other governmental and nongovernmental agencies about whether an individual is disabled...."); *Id.* at *6 ('... evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.").  Thus, the ALJ correctly stated the law regarding other decisions of

disability.

The ALJ also correctly applied the law regarding other decisions of disability.  The ALJ

discussed all of the medical evidence in the record, and it is readily apparent that this other

evidence also factored into his determination that Plaintiff was not disabled.  *See e.g.* AR 29

(ascribing "some weight" to medical source statement of Dr. Elsner).  This includes what limited

evidence there was in the record regarding the condition of Plaintiff's left knee.  *See* AR 23

(assessing Plaintiff with substantial exertional and nonexertional limitations).  The ALJ therefore

did not err in his consideration of the permanent impairment rating that Dr. Haney assigned to

Plaintiff.

### C.  The ALJ's Conclusion That There are Jobs Plaintiff is Capable of Performing

At the hearing on Plaintiff's disability claim, the VE testified that there were "a lot of

jobs" a person with Plaintiff's RFC was capable of performing and identified ticket checker and

telephone quotation clerk as two examples.  AR 60-1.  The ALJ asked the VE if this testimony

conflicted in any way with the *Dictionary of Occupational Titles ("DOT")* or addressed anything

that it did not cover.  AR 61.  The VE responded that there was no conflict between her

testimony and the *DOT* but that she did have to look at whether the jobs she identified would

allow Plaintiff to sit for 30 minutes and briefly stand, stretch, and sit back down again because

this issue and "[t]hings like that are not covered [by the *DOT*.]"  AR 62.

Relying on the VE's hearing testimony, the ALJ concluded that there were jobs existing

in sufficient numbers in the national economy that Plaintiff was capable of performing including

that of ticket checker and telephone quotation clerk.  AR 31-2.  In support of this conclusion, the

ALJ stated that he found the VE's hearing testimony to be consistent with the *DOT* "though the

[VE] noted that with regard to the sit/stand limitations noted in the formulated [RFC] above, experience as a vocational rehabilitation counselor was relied upon."  AR 32.

Plaintiff argues that because the job descriptions in the *DOT* do not specifically address the sitting and standing limitations assessed for Plaintiff, there is a "conflict by omission" between the *DOT* and the VE's testimony about the jobs Plaintiff is capable of performing.  I disagree that the *DOT's* silence with respect to Plaintiff's particular sitting and standing limitations creates a conflict with the VE's testimony.  *See Babb v. Colvin,* 2014 WL 4179886 at * 5 (D. Colo. August 22, 2014) ("...the *DOT's* silence as to a sit/stand option does not itself create an apparent conflict.")*.  Accord Zblewski v. Astrue,* 302 Fed. Appx. 488, 494 (7th Cir. 2008) ("Because the *DOT* does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the *DOT*.").  Rather, by taking Plaintiff's sitting and standing limitations into account, the VE was merely supplementing the *DOT* job descriptions as she is permitted to do.  *See Haddock v. Apfel,* 196 F.3d 1084, 1090 n. 2 ("... [vocational] expert testimony may be used to verify, clarify, and supplement information the agency has deemed reliable.").  Plaintiff stipulated to the VE's qualifications (AR 59) and cannot now complain that she could not use those qualifications to determine if there were jobs Plaintiff was capable of performing with her particular sitting and standing restrictions, an issue not addressed by the *DOT*.

Plaintiff also argues that the two jobs specifically identified by the VE, ticket checker and telephone quotation clerk, probably no longer exist in significant numbers in the national economy due to technological advances since the *DOT* descriptions of these positions were written.  The lay, unsubstantiated opinion of Plaintiff's counsel is not an adequate basis to

13

dismiss the VE's expert testimony about the availability of these jobs, particularly since this testimony was unchallenged at the hearing.  Thus, the ALJ reasonably relied on the VE's testimony regarding these jobs.  I further note that these jobs represented but two specific examples of the "lots of jobs" the VE opined Plaintiff was capable of performing.  AR 61.

### V.  Conclusion

Based on the applicable legal standards,  IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED for the reasons set forth above.


Dated: June   16  , 2015 in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE